Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| SUCESIÓN JOSÉ ANIBAL NIEVES LÓPEZ Y OTROS<br><br>*Recurridos*<br><br>v.<br><br>SUCESIÓN ABRAHAM NIEVES NEGRÓN Y OTROS<br><br>*Peticionarios* | TA2025CE00479 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: GM2024CV00048<br><br>Sobre: División o Liquidación de la Comunidad de Bienes Hereditarios y otros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de octubre de 2025.

Comparecen ante nos, los señores Juan Carlos Ortiz Nieves, José Carlos Ortiz Nieves, Carlos Abraham Ortiz Nieves, y las señoras Cándida Nieves López y Myrna Nieves Gutiérrez (en conjunto los peticionarios), mediante recurso de *Certiorari* y nos solicitan la revisión de (1) la *Orden*[1] emitida y notificada el 20 de agosto de 2025, mediante la cual se resolvió No Ha Lugar la *Moción de Reconsideración*, y (2) de la *Minuta-Resolución*[2] de la vista celebrada el 21 de julio de 2025 y notificada mediante certificación el 26 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI o foro recurrido), en la cual el TPI dispuso la designación de un Administrador Judicial del alegado caudal hereditario y ordenó la consignación del dieciocho por ciento (18%) de la totalidad de las rentas provenientes de los inmuebles en controversia.

---

[1] Entrada # 119 de SUMAC.
[2] Entrada # 120 de SUMAC.

Por los fundamentos que expondremos a continuación, ***denegamos*** el auto de *Certiorari*.

## I.

Surge del expediente que, el 25 de enero de 2024, la Sucesión José Aníbal Nieves López, José Aníbal Nieves Monserrate, Lisandra Beltrán Ramírez, y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Fernando Abraham Nieves Monserrate, Angela Bella Flores Martin y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Lydia Ivelisse Nieves Monserrate, Julio R. Valentín Nazario y la Sociedad Legal de Bienes Gananciales compuesta por ambos; y Socorro Ivelisse Monserrate Anselmi, todos por si y algunos como miembros de la Sucesión José Aníbal Nieves López, Sucesión Abraham Nieves Negrón, y la Sucesión de Cándida López (recurridos) y todos como accionistas de Abraham Nieves Company Inc., (ANCI), Bienes Nieves Incorporado (BNI) y Mueblerías Guamani Inc. (MGI), presentaron *Demanda*[3] contra Myrna Rosario Nieves Gutiérrez, Cándida Rosa Nieves López, Juan Carlos Ortiz Nieves, Carlos Abraham Ortiz Nieves, José Carlos Ortiz Nieves, Abraham Nieves Company, Inc., Bienes Nieves Incorporado, la Sucesión Abraham Nieves Negrón y Sucesión Cándida López compuestas ambas por Myrna Rosario Nieves Gutiérrez, Cándida Rosa Nieves López, Juan Carlos Ortiz Nieves, Carlos Abraham Ortiz Nieves, José Carlos Ortiz Nieves, José Aníbal Nieves Monserrate, Fernando Abraham Nieves Monserrate, Lydia Ivelisse Nieves Monserrate y la Sucesión Luis Antonio Nieves López compuesta por Myrna Rosario Nieves Gutiérrez (peticionarios).

El 24 de mayo de 2024, los recurridos presentaron *Moción en Solicitud de Enmienda a Demanda*[4], en la cual solicitaron excluir a José A. Nieves Monserrate, Lisandra Beltrán Ramírez y a su

---

[3] Entrada # 1 de SUMAC.
[4] Entrada # 52 de SUMAC.

sociedad legal de gananciales por renuncia y repudio de herencia, y anejó la *Demanda Enmendada.* En síntesis, los recurridos le solicitan al TPI que emita, un *injunction provisional, preliminar* y *permanente,* un *injunction estatutario* conforme a la Ley de Corporaciones de Puerto Rico en el Artículo 7.10 el cual le provee al accionista el mecanismo para proteger su interés sobre la corporación cuando le han violentado su derecho de acceso a los libros corporativos y otros[5], incluyeron una petición de acción derivativa contra los directores de las corporaciones[6], incumplimiento con el deber de fiducia por parte del albacea, daños continuos y/o sucesivos, embargo provisional conforme a la Regla 56.1 de las Reglas de Procedimiento Civil[7], que se designe un administrador judicial para las sucesiones y las entidades corporativas, se emita *Orden* para que TODOS los ingresos de las Corporaciones y Sucesiones sean consignados en este, se restituya toda cantidad de dinero que se haya retirado de las cuentas a nombre de las Sucesiones y Corporaciones, que no se haya utilizado para beneficio de estas. Se ordene el embargo preventivo, en aseguramiento del cumplimiento de la sentencia que se dicte en su día sobre cualquier propiedad (mueble o inmueble) de ANCI, BNI, MGI y las Sucesiones Abraham Nieves Negron y Cándida López, además de costas, gastos y honorarios de abogados. Además, solicitaron que se ordene el inventario y avalúo de los caudales relictos de las Sucesiones y la correspondiente adjudicación y partición de las herencias conforme a las disposiciones testamentarias de los causantes.

Desde el 31 de marzo de 2024, los peticionarios presentaron *Contestación a la Demanda* así como a la *Enmendada,* negaron las

---

[5] 14 LPRA secc. 3641.
[6] 14 LPRA secc. 3656.
[7] 32 LPRA Ap. V., R. 56.1.

alegaciones y esbozaron múltiples defensas afirmativas, incluyendo: (i) ausencia de reclamación válida en derecho; (ii) prescripción e incuria; (iii) falta de legitimación activa de los demandantes; (iv) falta de partes indispensables; (v) ausencia de daño irreparable; (vi) improcedencia de *injunction* y sindicatura solicitados; (vii) temeridad de los demandantes; (viii) alegaciones insuficientes bajo los precedentes *Twombly* e *Iqbal*; y (ix) reserva del derecho a presentar defensas adicionales tras el descubrimiento de prueba[8].

Por otro lado, el 1 de abril de 2024, las corporaciones ANCI, BNI y MGI presentaron su *Contestación a la Demanda, Reconvención y Demanda contra Terceros*[9]. Negaron la mayoría de las alegaciones de la demanda original, admitieron que los peticionarios son solo accionistas minoritarios de las corporaciones. Además, alegaron buena fe en sus actuaciones, invocando la doctrina del *business judgment rule* para justificar la suspensión de dividendos tras el huracán María y la priorización de fondos para la reconstrucción de propiedades. Así también levantaron múltiples defensas. Además, el 26 de julio de 2025 ANCI, BNI y MGI presentaron la *Contestación a la Demanda Enmendada, Reconvención y Demanda contra Terceros*[10].

En cuanto a los señores José Carlos Ortiz Nieves y Juan Carlos Ortiz Nieves, el 26 de agosto de 2024, presentaron la *Contestación a la Demanda Enmendada*[11]. Adujeron que la Sucesión de Abraham Nieves Negrón y la Sucesión de Cándida López fueron debidamente liquidadas, por lo cual, los reclamos de los recurrentes no proceden en derecho.

Finalmente, en lo pertinente a la controversia ante nuestra consideración; surge del expediente que, el 9 de abril de 2025 se

---

[8] Entrada # 40 de SUMAC.
[9] Entrada # 41 de SUMAC.
[10] Entrada # 112 de SUMAC.
[11] Entrada # 68 de SUMAC.

celebró vista sobre el estado de los procedimientos[12], ahí los recurridos solicitaron al foro recurrido que se nombrase un Administrador Judicial, esto, por el incumplimiento con la producción de información y documentos solicitada durante el descubrimiento de prueba. A dicha petición la representación legal de los peticionarios se opuso y alegó que, en cuanto a las Corporaciones, que eran negocios y quedaron inoperantes hace años. Alegaron, entre otras cosas, que las propiedades se han mantenido en alquileres para generar ingresos. Atendida la controversia, el foro recurrido concedió un término de treinta (30) días a los abogados de los peticionarios para proveer toda la documentación solicitada por los recurridos o en su defecto, nombraría al Administrador Judicial[13].

El 9 de junio de 2025, los recurridos presentaron *Moción Urgente Solicitando Nombramiento de Administrador Judicial*[14], en la cual solicitaron el nombramiento inmediato de un administrador judicial para ANCI, BNI y MGI, así como la intervención judicial en la administración del caudal hereditario de la Sucesión Abraham Nieves. Requirieron además que la vista señalada para el 24 de junio de 2025 se celebrara de forma presencial y no por videoconferencia. ANCI, BNI y MGI, presentaron *Moción para Compeler Cumplimiento con la Regla 34*[15]. Seguidamente, los recurridos presentaron *Moción en Oposición a Moción para Compeler Cumplimiento con la Regla 34*[16].

El 18 de julio de 2025, los peticionarios, Juan Carlos Ortiz Nieves, José Carlos Ortiz Nieves, Carlos Abraham Ortiz Nieves, Cándida Nieves López y Myrna Nieves Gutiérrez presentaron *Oposición a "Moción Urgente Solicitando Nombramiento de*

---

[12] Entrada #93 de SUMAC, *Minuta* transcrita el 14 de abril de 2025 y notificada a las partes el 25 de abril de 2025.
[13] *Íd.*
[14] Entrada #95 de SUMAC.
[15] Entrada #97 de SUMAC.
[16] Entrada #99 de SUMAC.

*Administrador Judicial"*[17], argumentaron que la solicitud de la parte recurrida carecía de sustancia y pretendía una intervención extraordinaria e injustificada en la gestión de corporaciones válidamente constituidas y en caudales hereditarios ya liquidados, y que cualquier adjudicación sobre dicho remedio requería la celebración de una vista evidenciaria amplia y formal, no meramente argumentativa.

El 19 de julio de 2025, las corporaciones codemandadas ANCI, BNI y MGI presentaron su *Oposición a Moción Solicitando Designación de Administrador Judicial y/o Síndico Corporativo*[18] (SUMAC Núm. 104).

El 21 de julio de 2025, el TPI celebró una vista presencial con los abogados de las partes, ese mismo día, emitió dos órdenes adicionales: (i) ordenó a las partes "presentar, en 45 días, una moción conjunta informando el nombre de un CPA para ser nombrado Administrador Judicial del caudal hereditario[19] (no de las corporaciones); y de no haber estipulación, cada parte deberá someter tres candidatos con sus CV para selección del Tribunal"; y (ii) "a modo de reconsideración" y para no afectar el flujo de efectivo de las empresas, ordenó a los peticionarios en 10 días identificar y producir el listado de inquilinos y la cuantía mensual de arrendamiento de los inmuebles correspondientes al caudal hereditario, y dispuso que "a partir del 1ro de septiembre de 2025, las partes demandadas consignen en el Tribunal la cantidad equivalente al 18% de la totalidad de las rentas, hasta tanto se designe el Administrador Judicial del caudal hereditario"[20].

El 6 de agosto de 2025, los peticionarios Juan Carlos Ortiz Nieves, José Carlos Ortiz Nieves, Carlos Abraham Ortiz Nieves,

---

[17] Entrada #103 de SUMAC.
[18] Entrada #104 de SUMAC.
[19] Entrada #105 de SUMAC.
[20] Entrada #106 de SUMAC.

Cándida Nieves López y Myrna Nieves Gutiérrez presentaron *Moción de Reconsideración en Torno a Órdenes Emitidas y Registradas en los SUMAC Núm. 105 y 106*[21] respecto de las *Órdenes* notificadas el 22 de julio de 2025 tras la vista del 21 de julio de 2025, en las que el TPI ordenó proponer candidatos a CPA para Administrador Judicial del "caudal hereditario", requerir listado de inquilinos y consignar 18% de rentas desde el 1 de septiembre de 2025. Solicitaron dejar sin efecto dichas órdenes porque no se celebró la vista evidenciaria exigida para remedios provisionales bajo la Regla 56, la petición de administración judicial no fue juramentada ni probada, y porque no existía caudal relicto administrable ya que las sucesiones de Abraham Nieves Negrón y Cándida López fueron liquidadas y adjudicadas (ofrecieron como prueba escrituras, planillas de caudal y certificaciones). Además, de señalar el incumplimiento con las Reglas 56.1, 56.2 y 56.3, de las Reglas de Procedimiento Civil[22], adujeron que la administración judicial es un remedio extraordinario improcedente según *In re Balzac Báez*, 109 DPR 670 (1980). En la alternativa, solicitaron una vista evidenciaria amplia (no menos de cinco días), y que se impusiera a los recurridos la carga de la prueba y, de determinarse temeridad, la imposición de costas y honorarios. El 26 de agosto de 2025, el TPI notificó la minuta de la vista argumentativa celebrada el 21 de julio de 2025.

Inconformes, el 19 de septiembre de 2025, los peticionarios comparecieron ante este foro intermedio apelativo mediante el recurso de epígrafe y plantearon el siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL ORDENAR EL NOMBRAMIENTO DE UN ADMINISTRADOR JUDICIAL DEL SUPUESTO CAUDAL HEREDITARIO Y LA CONSIGNACIÓN DEL 18% DE RENTAS, SEGÚN CONSTA EN LA ENTRADA NÚM. 120, SIN CELEBRAR LA VISTA EVIDENCIARIA REQUERIDA POR LA REGLA 56.2 DE PROCEDIMIENTO CIVIL, A PESAR DE QUE LA SOLICITUD DE LOS DEMANDANTES CARECÍA DE JURAMENTO Y NO ESTABA RESPALDADA POR PRUEBA

---

[21] Entrada #115 de SUMAC, la cual fue declarada No Ha Lugar.
[22] Entrada #120 de SUMAC.

ESPECÍFICA NI DOCUMENTAL. AL ASÍ DISPONER, EL TRIBUNAL IGNORÓ LA EVIDENCIA OFRECIDA SOBRE LA LIQUIDACIÓN Y ADJUDICACIÓN DE LAS SUCESIONES, IMPUSO REMEDIOS EXTRAORDINARIOS SIN BASE FÁCTICA NI JURÍDICA, Y DESNATURALIZÓ EL CARÁCTER EXCEPCIONAL Y SUBSIDIARIO DE LA ADMINISTRACIÓN JUDICIAL, EN CONTRAVENCIÓN CON LA JURISPRUDENCIA DE *IN RE BALZAC BÁEZ*, 109 DPR 670 (1980), Y LOS PRINCIPIOS DE DEBIDO PROCESO DE LEY.

Por su parte, el 2 de octubre de 2025, los recurridos presentaron *Oposición al Certiorari,* en la cual establecieron que la solicitud de *Certiorari* de los peticionarios no fue debidamente perfeccionada, al presentar el recurso fuera de término, además basaron su escrito y citaron un inexistente *In re Balzac Báez* y que, el señalamiento sobre abusó de su discreción por el TPI y ordenar un administrador judicial y la consignación del 18% sin vista evidenciaria y sin juramento carece de sustento. A su vez, ese mismo día, los recurridos presentaron *Moción Informativa* en la cual notificaron a este foro intermedio que, tuvieron problemas con la plataforma SUMAC del Tribunal de Apelaciones para descargar los anejos, y esto imposibilito completar la presentación de la *Oposición al Certiorari,* además informaron que procuraron asistencia con EDUCO y aunque recibieron una orientación, el problema con la plataforma continuo, así pues, tome conocimiento de esta situación técnica. Examinada la *Moción Informativa* procedemos a declarar Ha Lugar, conforme con la Regla 74 (F) de nuestro Reglamento[23].

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

## II.

### -A-

El auto de *Certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía

---

[23] Regla 74 (F) del Reglamento *del Tribunal de Apelaciones*, según enmendada, In Re Aprob. Enmda. Reglamento TA, 2025 TSPR 42, 215 DPR _____ (2025).

puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[24] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[25]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[26]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[27].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[28]. No obstante, la Regla 52.1, *supra,* faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[29].

---

[24] 32 LPRA Ap. V, R. 52.1.
[25] 4 LPRA Ap. XXII-B, R.40.
[26] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[27] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[28] *García v. Padró,* 165 DPR 324, 334-335 (2005); *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 180 (1992).
[29] 32 LPRA Ap. V, R. 52.1.

[…]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[30], para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *Certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *Certiorari*[31]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[32].

**-B-**

La Ley de Procedimientos Legales Especiales[33] establece las instituciones del contador partidor y el administrador judicial. Nuestro Tribunal Supremo ha interpretado el Art. 600 del Código de Enjuiciamiento Civil[34], y ha dispuesto que *los herederos en la*

---

[30] 4 LPRA Ap. XXII-B, R. 40.
[31] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[32] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).
[33] 31 LPRA sec. 2878.
[34] 32 LPRA sec. 2621.

*sucesión intestada tienen el mismo derecho que tiene un albacea al amparo de esta sección a saber, pedir en caso de desacuerdo entre los herederos, el nombramiento de un contador partidor*[35]. La Regla 56 de Procedimiento Civil, *supra*, establece los remedios provisionales que un demandante puede solicitar para asegurar la efectividad de una sentencia que ha obtenido a su favor o anticipa obtener[36]. Para ello, antes o después de la sentencia, la parte reclamante podrá solicitarle al tribunal mediante moción aquel remedio que sea necesario para asegurar la efectividad de la sentencia. En otras palabras, el remedio provisional tiene como propósito asegurar que el demandante pueda satisfacer su acreencia[37]. Entre las medidas provisionales disponibles están "el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso"[38].

La lista anterior, no obstante, no es taxativa, pues el tribunal tiene discreción de ordenar cualquier otra medida que estime apropiada[39]. Por lo tanto, "cuando un tribunal tiene ante su consideración una solicitud de remedio provisional en aseguramiento de sentencia, las disposiciones aplicables se deben interpretar con amplitud y liberalidad, concediendo el remedio que mejor asegure la reclamación y que menos inconvenientes ocasione al demandado"[40].

---

[35] *In re Ab Intestato de Genaro Balzac Vélez*, 109 DPR 670 (1980).
[36] *BPR v. SLG Gómez Alayón*, 213 DPR 314 (2023); *Scotiabank de Puerto Rico v. ZAF Corporation, supra*, pág. 487; *Citibank v. ACBI*, 200 DPR 724, 731 (2018); *Cacho Pérez v. Hatton Gotay*, 195 DPR 1 (2016).
[37] *Scotiabank de Puerto Rico v. ZAF Corporation, supra*, págs. 487-488.
[38] 32 LPRA Ap. V, R. 56.1.
[39] *Scotiabank de Puerto Rico v. ZAF Corporation, supra*, pág. 489; *Citibank v. ACBI, supra*, pág. 732.
[40] *Citibank v. ACBI, supra*, pág. 732.

Asimismo, el tribunal tiene discreción para conceder o denegar el remedio provisional[41]. Al momento de conceder los remedios provisionales, el tribunal tomará en cuenta varios criterios; a saber: (1) que sean provisionales; (2) tengan el propósito de asegurar la efectividad de la sentencia que en su día se pueda dictar y (3) se tomen en consideración los intereses de todas las partes, según lo requiera la justicia sustancial y las circunstancias del caso[42]. A su vez, la única limitación que tiene el tribunal es que la medida sea una razonable y adecuada para asegurar la efectividad de la sentencia[43].

Como regla general, se requiere la prestación de una fianza por parte de la persona que solicite un remedio provisional en aseguramiento de sentencia para responder por los daños y perjuicios que puedan surgir a consecuencia del aseguramiento[44].

Por otra parte, existen otros requisitos para la concesión de un remedio provisional tal como notificar la solicitud a la parte contraria y celebrar una vista de remedios provisionales previo a concederlo[45] Solamente se exime del requisito de celebrar una vista cuando esté presente una de las circunstancias establecidas en la Regla 56.4 y Regla 56.5 de Procedimiento Civil[46].

### III.

Tras examinar minuciosamente el expediente, la *Minuta-Resolución* emitida por el foro recurrido y los argumentos presentados por las partes, no identificamos que el TPI haya incurrido en prejuicio, parcialidad o error craso y manifiesto en la

---

[41] *Scotiabank de Puerto Rico v. ZAF Corporation, supra*, pág. 488; *Citibank v. ACBI, supra*, pág. 732; *Nieves Díaz v. González Massas, supra*, pág. 839.

[42] *Citibank v. ACBI, supra*, pág. 733; *Nieves Díaz v. González Massas, supra*, págs. 839-840.

[43] *Citibank v. ACBI, supra*, pág. 733; véase, además, *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 315 (2008).

[44] *Nieves Díaz v. González Massas, supra*, pág. 840.

[45] 32 LPRA Ap. V, R. 56.2, *Citibank v. ACBI, supra*, pág. 734.

[46] 32 LPRA AP. V, R. 56.4, 56.5.

apreciación de la prueba[47] que amerite la intervención de este Tribunal de Apelaciones **en esta etapa de los procedimientos**.

En el presente caso, los peticionarios no han demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos, por tanto, procede que se deniegue el recurso de *certiorari* de epígrafe.

**IV.**

Por los fundamentos expuestos, ***denegamos*** la expedición del auto de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[47] Regla 40 del Reglamento *del Tribunal de Apelaciones*, según enmendada, In Re Aprob. Enmda. Reglamento TA, 2025 TSPR 42, 215 DPR _____ (2025).